UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DAVID STEWART, INDIVIDUALLY AND ON BEHALF
OF ALL OTHER EMPLOYEES SIMILARLY SITUATED

                    Plaintiffs

   -   against  -

GEORGE KALTNER, AVATAR TECHNOLOGIES INC.,
SALES TECHNOLOGIES INC., SALES TECHNOLOGIES
LLC., and AVATAR OUTSOURCING, INC.

                  Defendants.

------------------------------------------------------------------------x

Civil Action No.:
17-cv-565


## PROPOSED FINDINGS OF FACT

## AND CONCLUSIONS OF LAW

**Jacob Chen, Esq.**

**DAI & ASSOCIATES, P.C.**
**Attorneys for Plaintiff**
**1500 Broadway, 22nd Floor**
**New York, New York 10036**
**Phone:     (212) 730-8880**
**Fax:        (212) 730-8869**
**www.daiassociates.com**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................. 1

PROPOSED FINDINGS OF FACT .......................................... 1

PROPOSED CONCLUSIONS OF LAW .................................... 7

    I.   DAVID STEWART IS ENTITLED TO RECOVERY UNDER THE FLSA AND NYLL FOR UNPAID OVERTIME ........................................... 7

    II. DAVID STEWART IS ENTITLED TO RECOVERY UNDER THE WAGE THEFT PREVENTION ACT ............................................. 9

    III.DAVID STEWART WAS AN EMPLOYEE AND NOT AN INDEPENDENT CONTRACTOR .................................................. 10

    IV. DAVID STEWART IS ENTITLED TO RECOVERY FOR MISCLASSIFICATION OF HIS EMPLOYMENT STATUS ......................... 12

    V. DAVID STEWART IS ENTITLED TO RECOVERY ON RETALIATION.................. 13

    VI. DEFENDANTS HAVE FAILED TO SHOW THAT DAVID STEWART'S FALLS UNDER EXECUTIVE OR ADMINISTRATIVE EXEMPTION ................... 15

        A.  DAVID STEWART WAS NOT A SALARIED EMPLOYEE................................. 15

        B.  DAVID STEWART'S PRIMARY DUTIES AND RESPONSIBILITIES ARE NOT EXEMPT IN NATURE ........................................ 16

CONCLUSION..................................................................... 18

i

## TABLE OF AUTHORITIES

### Cases

*Franco v Jubilee First Ave. Corp.*,
  14-CV-07729 (SN), 2016 WL 4487788 (SDNY 2016) ............................................. 7

*Gamero v Koodo Sushi Corp.*,
  272 F Supp 3d 481 (SDNY 2017) ...................................................................... 9

*Gustafson v Bell Atl. Corp.*,
  171 F Supp 2d 311 (SDNY 2001) ...................................................................... 11

*Haas v. Verizon N.Y., Inc.*,
  2015 BL 263365 (SDNY 2015) ......................................................................... 15

*Hernandez v Jrpac Inc.*,
  14 CIV. 4176 (PAE), 2016 WL 3248493 (SDNY 2016) ........................................... 9

*Impossible Entertainment, Inc. v Wulf*,
  2011 N.Y. Slip Op. 33997[U] (N.Y. Sup Ct, New York County 2011) ....................... 12

*Landaeta v. N.Y. & Presbyterian Hosp., Inc.*,
  2014 BL 58493 (SDNY 2014) .......................................................................... 11

*Meyer v. U.S. Tennis Ass'n*,
  2014 BL 256136 (SDNY 2014) .......................................................................... 11

*Pray v Long Is. Bone & Joint, LLP*,
  14CV5386SJFSIL, 2016 WL 9455557 (EDNY 2016) ............................................. 16

*Schwind v. EW & Assoc.*,
  357 F. Supp. 2d 691, 693 (SDNY 2005) ............................................................. 15

*Yu G. Ke v Saigon Grill, Inc.*,
  595 F Supp 2d 240 (SDNY 2008) ...................................................................... 8

*Yuquilema v Manhattan's Hero Corp.*,
  13-CV-461 WHP JLC, 2014 WL 4207106 (SDNY 2014) ......................................... 7

### Statutes

29 U.S.C. § 215(a)(3) ....................................................................................... 13
29 U.S.C. § 216(b) ........................................................................................... 8
29 U.S.C. § 260 .............................................................................................. 8
29 U.S.C. §207 ............................................................................................... 7
29 USC § 216 ................................................................................................. 8
NYLL § 195(1)(a) ............................................................................................ 9
NYLL § 195(3) ............................................................................................... 9
NYLL § 198(1–b) ............................................................................................. 9
NYLL § 198(1-d) ............................................................................................. 9
NYLL § 198(1–d) ............................................................................................. 9
NYLL §198 .................................................................................................... 10
NYLL §663(1) ................................................................................................ 7

### Regulations

29 C.F.R. § 541.100 ........................................................................................ 16
29 C.F.R. § 541.200 ........................................................................................ 16
29 CFR 541.301 ............................................................................................. 17

Plaintiff David Stewart, ("David Stewart"), by and through his attorneys, Dai &
Associates, P.C., hereby file these proposed findings of fact and conclusions of law, and
corresponding memorandum of law

## PRELIMINARY STATEMENT

Defendants, in an effort to illegally underpay employees and evade taxes, intentionally
misclassified its employees as independent contractors, failed to maintain and keep records
required of them under New York Law, and refused to pay employees overtime for time worked.
The reality is David Stewart was a non-exempt employee, tasked with various duties but
primarily those of a bookkeeper in nature. He generally worked sixty (60) hours a week, for
which he was not paid overtime.

Wherefore because of Defendants' violations of the FLSA and New York State Law,
including the Wage Theft and Prevention Act, David Stewart is entitled to compensatory
damages, liquidated damages, statutory fees, and attorneys' fees.

## PROPOSED FINDINGS OF FACT

1.      Defendants Avatar Technologies Inc. ("Avatar Technologies"), Sales
Technologies Inc. ("Sales Technologies"), and Avatar Outsourcing, Inc. ("Avatar Outsourcing"),
collectively ("Defendant Entities") all operated out of 138 S Columbus Ave., Mount Vernon, NY
10553, and utilized the same space, telephone number, equipment, and workers.

2.      Defendant Entities were engaged in interstate commerce, specifically in the
business of operating an interstate call center.

3.      Defendant Entities' customers came from various states including outside of New York and Defendant Entities engaged an affiliate in the Philippines to operate the phones on behalf of Defendant Entities' customers.

4.      The annual revenue of Defendant Entities individually and collectively grossed excess of $500,000 per year.

5.      Defendant George Kaltner ("Defendant Kaltner") was the sole owner and principle of Defendant Entities and in charge of all decision making as pertaining to the hours of work, compensation, and duties and responsibilities for all workers of Defendant Entities.

6.      David Stewart began working for Defendant Entities December 8, 2011.

7.      The first entity David Stewart worked for was Sales Technologies Inc.

8.      David Stewart was hired by George Kaltner.

9.      No wage notices were provided by Defendants to David Stewart at the time he started working for Defendants.

10.     No pay stubs were provided by Defendants to David Stewart at any time during his period of work for Defendants.

11.     David Stewart worked for Defendant Entities as a bookkeeper. His primary duties and responsibilities were to keep track of payments received, on boarding new clients, adding or subtracting seats to clients' accounts, and applying credits to clients' accounts once payments were received.

12.     The work of bookkeeping was integral to Defendant Entities' business.

13.     David Stewart routinely received instructions and directions from George Kaltner among others, directing him to perform these tasks for clients.

2

14.     Defendants had complete control over David Stewart's work including the means by which he performed his work, and supplied him with the tools, such as the software and laptop, by which David Stewart performed his work.

15.     David Stewart did not exercise any discretion or independent judgment and when instructed to add or subtract seats or apply payments, did so as instructed.

16.     From December 8, 2011 to January 31, 2012, David Stewart was paid $1000 every month. February 1, 2012 to September 1, 2012, David Stewart was paid $2,000 every month. From September 1, 2012 to July 1, 2013, he was paid $4,600 every month. From July 1, 2013 to December 1, 2013, he was paid $5,200 every month. From December 1, 2013 to February 1, 2014, he was paid $6,200 every month. All payments were made biweekly. These payments were made by Defendant Sales Technologies, Inc.

17.     David Stewart was not a salaried employee and was not paid an annual salary and therefore is not subject to the exemptions under the FLSA.

18.     David Stewart had no ownership in or profit sharing arrangement in Defendant Entities.

19.     David Stewart never paid on any sort of project by project basis and received regular, biweekly payments.

20.     There was never any term or length of employment that was discussed and David Stewart was hired to work as a full time, permanent employee.

21.     David Stewart worked at Defendant Entities' office (138 S Columbus Ave., Mount Vernon, NY 10553) from about 9:00 AM to about 7:00 PM Mondays to Fridays, with a 30 minute break for lunch. Additionally, David Stewart was expected to and did in fact work an additional 2-3 hours a day after his scheduled work hours remotely as he would regularly be

3

contacted by George Kaltner and receive orders to add or subtract seats for customers or add or

subtract credits. David Stewart also worked remotely on weekends for the same reason.

Altogether, David Stewart worked sixty (60) hours a week.

22.     David Stewart was never paid any overtime compensation.

23.     From December 2011 through October 2012, the payments were directly to David

Stewart.

24.     During that time, David Stewart worked for no company other than Sales

Technologies, Inc. David Stewart worked at Sales Technologies, Inc. full time.

25.     In July 2012, George Kaltner ordered all the employees of Sales Technologies,

Inc. to incorporate.

26.     In October 2012, because the employees were slow to comply, George Kaltner

went one step further and actually formed the corporations and refused to pay his employees

except through the corporations he formed on their behalf.

27.     George Kaltner paid for and formed David TPO LLC and decided unilaterally that

all payments to David Stewart would be made through David TPO LLC.

28.     Thereafter David Stewart continued working for Defendant Entities without any

change in responsibilities or duties, but was instead paid through David TPO LLC.

29.     From February 1, 2014 to April 1, 2014, David Stewart was paid $7,000

every month. From April 1, 2014 to April 1, 2015, David Stewart was paid $8,000 every

month. David Stewart was paid $4,166.68 for the month of April 2015. These payments

were made by Avatar Technologies and David Stewart was paid every two weeks.

30.     At one point, Defendant Entities also paid other employees, primary Raudy Ulloa

through David TPO LLC. Defendant Entities had previously designated Raudy Ulloa as an

employee but decided to also treat him as an independent contractor. Defendant Entities paid Raudy Ulloa through David TPO LLC until Raudy Ulloa created his own company at Defendant Entities' instructions.

31.     From December 2011 through April 2015, David Stewart had no source of income except from Defendant Entities, first through Sales Technologies and then through Avatar Technologies.

32.     David Stewart never received any paid vacation days or health insurance while working to Defendant Entities.

33.     Defendant Entities made no contributions towards David Stewart's Federal Insurance Contributions Act ("FICA") taxes.

34.     The decision by Defendants to classify David Stewart and other employees as an independent contractor was done intentionally and specifically in order to evade payment of taxes, as demonstrated in Defendants' email specifically referring to taxes.

35.     Starting in January 2014, David Stewart began also being required to serve as George Kaltner's personal assistant.

36.     This work was integral to Defendant Entities' operations as those entities relied on George Kaltner to travel and secure business for Defendant Entities.

37.     Starting February 2015, David Stewart's responsibilities changed entirely to that of being George Kaltner's personal assistant and was required to assist George Kaltner with making bookings for flights and hotels and managing George Kaltner's scheduling. David Stewart was not imbued with discretion or independent judgment with respect to these secretarial tasks.

5

38.     Defendants unilaterally took away all of David Stewart's duties and responsibilities with respect to billing.

39.     Other than for a short period of time when David Stewart was sent by Defendant Entities to the Philippines at the end of 2014, David Stewart worked for Defendant Entities in the United States.

40.     In October 2015, David Stewart applied for unemployment insurance and began arguing that he was an employee of Defendants and not an independent contractor.

41.     In August 2016, Defendants threatened David Stewart with tremendous legal bills unless David Stewart came to some "binding agreement" which was a general release and a confidentiality agreement and dropping the unemployment insurance claim.

42.     In October 2016 the DOL decided in David Stewart's favor, finding that he was an employee.

43.     In October 2016, David Stewart advised Defendants (through counsel) that they had failed to pay him overtime and threatened to bring a lawsuit seeking back pay.

44.     David Stewart refused to do as Defendants demanded with respect to signing a confidentiality agreement and general release.

45.     Then on December 5, 2016, Defendants filed a lawsuit against David Stewart alleging trademark infringement, the intent of which was to harass and intimidate David Stewart and other employees.

46.     Defendants' lawsuit was motivated at least in part by a desire to take retaliation against David Stewart.

47.     As a result, David Stewart has had to incur significant legal fees and many difficulties.

## PROPOSED CONCLUSIONS OF LAW

I.   **DAVID STEWART IS ENTITLED TO RECOVERY UNDER THE FLSA AND NYLL FOR UNPAID OVERTIME**

Section 207 of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §207, and Section 663 of the New York Labor Law ("NYLL"), NYLL §663(1), requires to employer to pay employees overtime if employees work over 40 hours a week.

David Stewart worked 60 hours a week. He had an employee-employer relationship with Defendant Entities. Defendant Entities operated in interstate and in fact international commerce, with annual sales in excess of $500,000. David Stewart was never paid overtime for any of the time periods that he worked. As a matter of law, "there is a rebuttable presumption that a weekly salary covers 40 hours." *Yuquilema v Manhattan's Hero Corp.*, 13-CV-461 WHP JLC, 2014 WL 4207106, at *5 (SDNY Aug. 20, 2014). There is no evidence on the record rebutting that presumption.

"Under both the FLSA and NYLL, personal liability may be imposed on employers for wage and hour violations. Under the FLSA, 'employer' is defined as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Franco v Jubilee First Ave. Corp.*, 14-CV-07729 (SN), 2016 WL 4487788, at *4 (SDNY Aug. 25, 2016) (internal citations omitted). George Kaltner directly had the sole possessory interest in the company, dominated its administration, and had sole discretion and power to act on behalf of the Defendant Entities vis-à-vis David Stewart, and therefore is personally liable for damages accordingly.

Wherefore Defendants are liable to David Stewart for damages arising out of Defendants' violation of the FLSA and NYLL.

The following table captures the total compensatory damages due to David Stewart:

7

| Time Frame | Months | Monthly Compensation | Calculated Hourly Salary (at 40 hours) | **Unpaid OT** |
|---|---|---|---|---|
| December, 2011-January 2012 | 2 | $1,000 | $5.77 | **$1,500.00** |
| February 2012-August 2012 | 7 | $2,000 | $11.54 | **$10,500.00** |
| September 2012 to June 2013 | 10 | $4,600 | $26.54 | **$34,500.00** |
| July 2013 to November 2013 | 5 | $5,200 | $30.00 | **$19,500.00** |
| December 2013 to January 2014 | 2 | $6,200 | $35.77 | **$9,300.00** |
| February 2014 to March 2014 | 2 | $7,000 | $40.38 | **$10,500.00** |
| April 2014 to March 2015 | 12 | $8,000 | $46.15 | **$72,000.00** |
| April 2015 | 1 | $4,166.68 | $24.04 | **$3,125.01** |
| | | | | |
| Total | | | | **$160,925.01** |

In addition, a plaintiff who demonstrates that he was improperly denied either minimum wages or overtime may recover, in addition to reimbursement of unpaid wages, an amount equal to the unpaid wages unless the employer demonstrates that it acted in good faith and had reasonable grounds for believing that it had not violated the FLSA. 29 U.S.C. § 216(b); *Yu G. Ke v Saigon Grill, Inc.*, 595 F Supp 2d 240, 261 (SDNY 2008). But "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.... The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception." *Id.*

Wherefore David Stewart is also entitled to liquidated damages of $160,925.01 for combined compensatory and liquidated damages of $321,850.02. Additionally, David Stewart is also entitled to his costs and attorney's fees from this action. *See* 29 USC § 216.

## II.     DAVID STEWART IS ENTITLED TO RECOVERY UNDER THE WAGE THEFT PREVENTION ACT

Furthermore, David Stewart was never given any pay stubs or wage notifications as required pursuant to the Wage Theft Prevention Act (WTPA) of the NYLL.  As discussed *supra*, George Kaltner was an employer by virtue of his control of all the entities and specifically his control over David Stewart, and as such, bears personal liability for his violation of the NYLL.

NYLL § 195(1)(a) requires employers to provide all employees with a written notice at the time of hiring. NYLL § 198(1–b) confers a private right of action upon those employees who do not receive such notice at the time of hiring. Defendants failed to provide David Stewart with a written notice at the time of hiring.

NYLL § 195(3) requires employers to furnish each employee paystubs listing dates of work, name of employee, name of employer, and rate of pay including basis thereof. NYLL § 198(1–d) also confers a private right of action for employees who did not receive such notices. Defendants have never given David Stewart any paystubs or provided David Stewart with the information required under § 195(3).

The damages with respect to both 195(1) and 195(3) were previously capped at $2,500 until the statute was amended in February 2015. *See Gamero v Koodo Sushi Corp.*, 272 F Supp 3d 481, 511 (SDNY 2017). Under the original statute, the penalties were "$50 for each week of work that the violations occurred, up to a maximum of $2,500" for 195(1) and "$100 per work week in damages, with a cap of $2500" for 195(3). *See Hernandez v Jrpac Inc.*, 14 CIV. 4176 (PAE), 2016 WL 3248493, at *29 [SDNY June 9, 2016]. In February 2015, the penalty was increased to "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198(1-d).

David Stewart worked from December 2011 through April 2015.

9

Originally David Stewart worked for Sales Technologies, which then became Avatar Technologies, and then finally Avatar Outsourcing.

At *minimum*, treating all Defendant Entities as one company, David Stewart would be entitled to $2,500 for violation of 195(1), $2,500 for the violation of 195(3) from December 2011 to February 2015, and an additional $2,500 for the violation of 195(3) from February 2015 through April 2015, for total damages of $7,500. If the Court finds that Sales Technologies and Avatar Technologies were separate companies, then David Stewart would be entitled to $5,000 in total from Sales Technologies and $7,500 from Avatar Technologies. If the Court finds that Sales Technologies, Avatar Technologies, and Avatar Outsourcing were three separate companies, then David Stewart would be entitled to $5,000 from Sales Technologies, $5,000 from Avatar Technologies, and $7,500 from Avatar Outsourcing, for total damages of $17,500.

In addition, David Stewart would be entitled to both costs and reasonable attorney's fees. NYLL §198. Wherefore altogether David Stewart is entitled to damages of not less than $7,500 but up to $17,500.

### III.   DAVID STEWART WAS AN EMPLOYEE AND NOT AN INDEPENDENT CONTRACTOR

It is anticipated that Defendants will argue that they are not subject to the FLSA or NYLL because David Stewart was an independent contractor and not an employee.

"In determining whether someone is an employee for FLSA purposes, a court employs the 'economic reality' test which considers: (1) the degree of the employer's control over the worker; (2) the worker's opportunity for profit or loss and his investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business. The test is intended to be broad so that the [provisions will] have the

widest possible impact in the national economy. No one factor in this common law test is dispositive and 'the test is based on the totality of the circumstances. Furthermore, the ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in the business for themselves." *Gustafson v Bell Atl. Corp.*, 171 F Supp 2d 311, 324 (SDNY 2001) (internal quotations and citations omitted).

For purposes of the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Landaeta v. N.Y. & Presbyterian Hosp., Inc.*, 2014 BL 58493, 4 (SDNY 2014). With that said, "the standards for determining employee status under the FLSA and the NYLL are similar." *Meyer v. U.S. Tennis Ass'n,* 2014 BL 256136, 5 (SDNY 2014). And further, "there is general support for giving FLSA and the New York Labor Law consistent interpretations. There appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice ver sa)." *Id* at 9 (internal quotations and citations omitted).

In the instant case, Defendant Entities had complete control over David Stewart's work including both the duties, responsibilities, results, and means. Defendant Entities provided David Stewart with a work location, software, and equipment on which David Stewart worked. David Stewart was paid on a bi-weekly basis. He had no ownership interest in or investment in Defendant Entities, nor was he paid on any sort of project-by-project basis. David Stewart's work as a bookkeeper and later on as a personal assistant did not require a high degree of skill or independent initiative. David Stewart routinely received instructions and directions from others in the company. David Stewart worked for Defendants from 2011 to 2015, and there was never

any indication that his employment was temporary or on a project by project nature. He was hired as a full time, permanent employee. David Stewart's work in billing and bookkeeping were an integral part of Defendants' Entities' business. David Stewart's work as George Kaltner's personal assistant was also integral as it directly related to George Kaltner's ability to secure business for Defendant Entities. And lastly, overall, David Stewart was completely dependent on Defendants for income and has no other sources of income during the time he worked for Defendant.

Wherefore David Stewart is *not* an independent contractor and is entitled to seek overtime under the FLSA and the NYLL that protect employees.

## IV.    DAVID STEWART IS ENTITLED TO RECOVERY FOR MISCLASSIFICATION OF HIS EMPLOYMENT STATUS

In order to state a claim for unjust enrichment, plaintiff must show that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Impossible Entertainment, Inc. v Wulf*, 2011 N.Y. Slip Op. 33997[U] (N.Y. Sup Ct, New York County 2011) (internal citations and quotations omitted).

In *Impossible Entertainment* the Supreme Court of the State of New York upheld a claim for unjust enrichment through misclassification of an employee, specifically holding that assuming "defendant was in fact an employee of the plaintiff, plaintiff was unjustly enriched in an amount equal to 7.65% of defendant's net earnings for each year of his employment." *Id*. This figure was derived from the Social Security Administration which showed that "An employee's 2011 Social Security tax and Medicare tax are paid by the employee at a rate of 4.2% and 1.45%, respectively and the employer pays 6.2% and 1.45%, respectively. However, an independent contractor (i.e., self-employed) pays 10.4% and 2.9% respectively." *Id*. Therefore the

12

misclassification "permitted plaintiff to retain the 7.65% that it should have paid in FICA (6.2%

Social Security plus 1.45% Medicare)." *Id*.

The following chart outlines the total therefore misappropriated and therefore due to

David Stewart:

| Time Frame | Months | Monthly Compensation | Total Amount Paid | **Amount Misappropriated** |
|---|---|---|---|---|
| December, 2011-January 2012 | 2 | $1,000 | $2,000.00 | **$153.00** |
| February 2012-August 2012 | 7 | $2,000 | $14,000.00 | **$1,071.00** |
| September 2012 to June 2013 | 10 | $4,600 | $46,000.00 | **$3,519.00** |
| July 2013 to November 2013 | 5 | $5,200 | $26,000.00 | **$1,989.00** |
| December 2013 to January 2014 | 2 | $6,200 | $12,400.00 | **$948.60** |
| February 2014 to March 2014 | 2 | $7,000 | $14,000.00 | **$1,071.00** |
| April 2014 to March 2015 | 12 | $8,000 | $96,000.00 | **$7,344.00** |
| April 2015 | 1 | $4,166.68 | $4,166.68 | **$318.75** |
| | | | | |
| Total | | | | **$16,414.35** |

## V.     DAVID STEWART IS ENTITLED TO RECOVERY ON RETALIATION

The FLSA makes it unlawful to "discriminate against any employee because such

employee has filed any complaint or instituted or caused to be instituted any proceeding under

[the FLSA]." 29 U.S.C. § 215(a)(3). There is a similar provision in the NYLL. NYLL § 215.

To establish retaliation, Plaintiff must first establish an adverse employment action.

Courts have repeatedly held that "lawsuits designed to deter claimants from seeking legal

redress constitute impermissibly adverse retaliatory actions, even though they do not arise

strictly in an employment context." *Torres v Gristede's Operating Corp.*, 628 F Supp 2d 447,

472 (SDNY 2008). The record shows that Defendants have filed an action against David Stewart.

13

Plaintiff then has to establish an "inference of retaliation" by either "a causal connection between the protected activity and the adverse action." *Id* at 473. The causal connection may be established by "(1) evidence of retaliatory animus directed against a plaintiff by the defendant; or (2) a close temporal proximity between the protected activity and the adverse employment action." *Id*. The record again shows that Defendants filed an action against David Stewart *after* he notified Defendants and complained about a failure to pay overtime and filed a complaint with the New York Department of Labor ("DOL") and the DOL had decided in David Stewart's favor.

Additionally, there is direct evidence here as the record shows, George Kaltner has repeatedly threatened David Stewart with "substantial" legal bills and "tremendous amount of litigation" unless David Stewart would agree to "work something out" with George Kaltner. He even admitted in his emails that this was "a distraction to us" but threatened to hit David Stewart with "large legal bills" unless he came to "some kind of binding agreement." As David Stewart will testify the veiled language here specifically was to force David Stewart to sign some sort of hush agreement and general release. When David Stewart refused to sign a general release or confidentiality agreement, Defendants commenced a federal action against David Stewart and in fact carried through on their threat of tremendous amount of litigation.

To the extent that Defendants take the position that its lawsuit for trademark violation is meritorious, even if the employer succeeds, an employer is still liable for retaliation if the *intent* is to harass and retaliate against employees. *See Spencer v Intl. Shoppes, Inc.*, 902 F Supp 2d 287, 297 (EDNY 2012) (Holding that the "correct standard" is one that "looks to whether retaliatory intent played a motive in the filing of the State Court litigation" after examining multiple cases across different jurisdictions.)

14

Wherefore David Stewart is entitled to damages including injunctive relief, sanctions, and legal fees in the retaliation lawsuit.

## VI.    DEFENDANTS HAVE FAILED TO SHOW THAT DAVID STEWART'S FALLS UNDER EXECUTIVE OR ADMINISTRATIVE EXEMPTION

It is anticipated that Defendants' primary defense in this action will be that David Stewart is not entitled to FLSA overtime payments because he is an exempt employee.  "An employer seeking to rely upon an exemption as a defense to paying overtime bears the burden of proving that such exemption applies." *Haas v. Verizon N.Y., Inc.*, 2015 BL 263365, 11 (SDNY 2015).

### A.  DAVID STEWART WAS NOT A SALARIED EMPLOYEE

It is undisputed that from December 2011 through April 2015, with respect to compensation and benefits, Defendants treated David Stewart as an independent contractor. *For that reason alone*, Defendants are now precluded from maintaining that David Stewart was actually a salaried, exempt employee. In *Schwind v. EW & Assoc.*, 357 F. Supp. 2d 691, 693 (S.D.N.Y. 2005), the Court explicitly held, "during the periods in which plaintiff was treated as an independent contractor, April 1998 through January 1, 2001 and June 2002 through October 2002, the 'bona fide executive, administrative or professional' exemption is unavailable to defendants because plaintiff was not paid on a salary basis and received only commissions."

Because Mr. Stewart was "treated as an independent contractor" through his entire term of employment, he was never paid a salary, a fundamental requirement for Defendants to meet the burden of proving that David Stewart was an exempt, *salaried* employee.

15

**B. DAVID STEWART'S PRIMARY DUTIES AND RESPONSIBILITIES ARE NOT EXEMPT IN NATURE**

"Certain employees, including those who are employed in a bona fide executive, administrative, or professional capacity, are exempt from the FLSA's minimum wage and overtime compensation requirements." *Pray v Long Is. Bone & Joint, LLP*, 14CV5386SJFSIL, 2016 WL 9455557, at *9 (EDNY 2016).

Pursuant to 29 C.F.R. § 541.100, the phrase "employed in a bona fide executive capacity" includes any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week … (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

> 29 C.F.R. § 541.100(a)

Pursuant to 29 C.F.R. § 541.200, the phrase "employed in a bona fide administrative capacity" includes any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

> 29 C.F.R. § 541.200(a)

David Stewart's "primary duty" was **not** that of "management of the enterprise in which the employee is employed". Nor did it include "the exercise of discretion and independent judgment with respect to matters of significance". His "primary duty" was originally in billing as

16

a bookkeeper and later on in serving as Kaltner's personal assistant. Bookkeepers are not considered exempt employees. *See* 29 CFR 541.301.

The factual evidence on record shows other employees of the company routinely giving David Stewart directions with respect to billing and issuance of invoices. There are no emails in the other direction where David Stewart is directing others what to do. In no instance does David Stewart demonstrate any management of other individuals or the exercise of discretion. In instances where credits or refunds were issued, the instruction and permission originated from George Kaltner or other executives. David Stewart routinely received instructions as to how much to bill clients for, and him following through by issuing the bills required of him.

David Stewart's primary duties shifted when he became Kaltner's personal assistant. His duties went from billing to scheduling appointments, booking travel arrangements, ordering food for Kaltner, and other miscellaneous tasks such as canceling a telephone line or filing some documents. Again, there are no instances where David Stewart either managed other employees or exercised discretion and independent judgment with respect to matters of significance. A particularly telling example is the April 10, 2015 email from Kaltner directing David Stewart. In it, he directs David Stewart to keep the office "spotless", "order the food", but "send to me for approval before ordering", "book all travel and shows" and "book all of my appointments and enter into my schedule". None of these tasks fall under the executive or administrative capacity.

Defendants bear the burden of proof with respect to this issue. David Stewart anticipates that Defendants will not have met their burden of proof on this element.

## CONCLUSION

Wherefore David Stewart respectfully asks that this Court issue the findings of fact and conclusions of law as outlined above and grant judgment in favor of him accordingly.

Dated:       November 22, 2019
           New York, New York

                                   DAI & ASSOCIATES, P.C.

                                   /s/ Jacob Chen
                                   By: Jacob Chen, Esq.
                                   Attorneys for Plaintiff
                                   1500 Broadway, 22nd Floor
                                   New York, New York 10036
                                   (212) 730-8880