

www.daiassociates.com

**New York Office**
Times Square Plaza
1500 Broadway, 22nd Floor
New York, New York 10036
Telephone: 001-212-730 8880
Facsimile: 001-212-730 8869

**Shanghai Office**
International Finance Center
8 Century Avenue, Tower 2, 8th Floor
Shanghai (Pudong) 200120, China
Telephone: 0086-21-6062 7268
Facsimile: 0086-21-6062 7288

May 27, 2020

<u>Via ECF</u>
Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

   Re: Stewart v. Kaltner, et al.
     Case No.: 1:17-cv-00565

Your Honor:

 Plaintiff's counsel, along with Defendants' counsel, request that the Court approve the settlement reached in this matter. A copy of the proposed settlement agreement is annexed herein as **Exhibit A**.

### Settlement Amount

 Both parties believe that the settlement amount is fair and reasonable and is the result of extensive, multiple-day, arms'-length negotiations by and through the assistance of a mediator appointed by the Southern District's Alternative Dispute Resolution program subsequent to the trial in this matter.

 This action was originally brought by Plaintiff David Stewart ("Stewart") for alleged unpaid overtime wages, failure to give wage notice at the time of hire, failure to provide paystubs, and other miscellaneous relief brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 <u>et seq</u>. and the New York Labor Law ("NYLL").

 Mr. Stewart argues that he worked initially primarily in a bookkeeping capacity before working as a personal assistant, that he was an employee of Defendants wrongfully misclassified as an independent contractor, that he was a non-exempt employee who routinely worked overtime, and that Defendants failed to pay him any overtime for his work.

Defendants' position is that Stewart was an independent contractor and that he rendered services through the use of his own business entity, David TPO LLC. Defendants' also posit that, even if Stewart was an employee, he was an exempt employee under the applicable standards because he managed Defendants' billing department, supervised other employees, and had the discretion to make important decisions in the course of his day to day duties. Defendants allege that documentary and testimonial evidence, including Stewart's sworn statements under oath in other companion matters, as well as his own Linkedin Profile and resumes establish that he was in fact the billing coordinator and manager of the entire billing and finance departments for the Defendants.

The parties also fiercely dispute the amount of potential damages.

Plaintiff's position is that he was entitled to unpaid overtime in the amount of $160,925.01, an equal amount in liquidated damages, and other miscellaneous relief for total damages excluding legal fees of approximately $350,000.00, not including his claims for damages under his retaliation claim. Defendants take the position Plaintiff is not entitled to any damages at all, Plaintiff was not harmed, and, in fact, obtained substantial benefits by way of providing services through his business rather than as an employee. Defendants further take the position that, even if Plaintiff could establish that he was a non-exempt employee instead of an independent contractor or exempt employee, there was only a brief span of time at the beginning of the subject period that he could be construed as a non-exempt employee and his entitlement to damages would be nominal at best.

Defendants also take the position that even if Plaintiff prevails, any recovery would be subject to forfeiture in the separate, but related action brought by Defendants against Plaintiff and other parties for various issues including the allegation that Plaintiff mismanaged Defendants' business and as a result caused Defendants to incur significant damages.

The settlement as agreed to as fair and reasonable by the parties is the gross amount is $20,000.00, of which $10,000 would be payable to the Plaintiff as damages, including liquidated damages. The Parties have agreed that this amount represents a reasonable compromise of the Parties' positions and takes into account the risks of a decision at trial for either side. In addition to this gross settlement, Defendants have also agreed to be embodied in a separate agreement, to discontinue with prejudice the "TM Action" as to and against Stewart and full and complete resolution of all pending disputes between the parties such that all concurrent litigation can conclude allowing the parties to fully separate.   A portion of the compromise is to close out all matters and disputes by and between them and be able to move forward in their respective personal and corporate lives.

In considering whether a settlement is fair and reasonable, a court may

approve a settlement where it "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. Sita Information Networking Computing USA, Inc.*, No. 07 Civ. 0086, 2008 U.S. Dist. LEXIS 46174 at *2 (E.D.N.Y. June 12, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Kopera v. Home Depot U.S.A., Inc.*, No. 09 Civ. 8337, 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved.").

The Parties agree that the $10,000 sum, in addition to all other relief including discontinuation of the TM Action, is a reasonable compromise taking into consideration all factors and issues that were litigated in this case, and the risks of either side losing at trial in either matter. Given the division in the parties' version of events, the documentary evidence available and the fact that all parties would have to assume their respective burden in proving their position in trial with post-trial briefs, the potential appeal and/or cross-appeals following conclusion of trial, and the difficulty in collection of judgments (the individual defendant has moved from New York to Puerto Rico, most of the corporate defendants are no longer operating and the sole operating business is a foreign entity in the Philippines), this range of recovery is reasonable. Plaintiff made an economic decision that the certainty of receiving the offered judgment and the certainty of collection outweighed the uncertain potential of recovering damages at all or attaining a judgment for damages which Plaintiff has neither the resources or ability to recover, especially against Defendants that have shown a willingness to pursue all legal means at Defendants' disposal.

### **Attorney Fees**

A copy of Dai & Associates PC's contemporaneous time records and expenses are attached hereto as **Exhibit B**. The settlement in this action was reached *post* trial. Altogether, the total number of hours expended in this action on behalf of Plaintiff was 384.40. The payment of sums to Plaintiff's counsel in settlement of $10,000.00 represents a considerable discount and a fraction of the total legal fees Plaintiff would be entitled in this action. Plaintiff's counsel's negotiated fees represent a fraction of the total time spent by counsel and reflected the time required to counter the defense deployed by Defendants including one motion to dismiss and two motions for summary judgment, none of which were ultimately successful with the summary judgment motion being denied without prejudice due to the Court's desire for testimony.

In *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy

considerations." 209 F.3d at 50.

Regarding the first factor, Exhibit B lays out the significant time and labor that has been expended in this case, from defending against Defendants' multiple motions through preparing for, litigating a three-day bench trial and two settlement conferences. Regarding the second factor, as the Court is well aware, the instant case represents an unusually complex wage and hour matter where the parties were required to submit lengthy pre-trial briefs, along with hundreds of pages of exhibits. The Court itself acknowledged that the issues were complex enough that post-trial briefs were necessary as well. Were this case to be submitted to the Court for determination, there is the risk of Defendants being required to pay considerably more in attorneys' fees. Regarding the quality of representation, this factor is generally not relevant but the Court has viewed the parties' presentation of the issues by trial. Public policy considerations weigh heavily in favor of approving the settlement as it discourages frivolous motion practice and over-litigation, especially when such tactics are intended to discourage attorneys from taking on FLSA cases.

This payment is also entirely consistent with the engagement letter, attached as Exhibit C, by and between Mr. Stewart and the firm. Mr. Stewart had agreed to pay legal fees in an amount of not less than $10,000. Notwithstanding the language of the engagement letter, Mr. Stewart was not able to pay and therefore never did actually pay the $10,000 fee that was contemplated nor did the firm require him to make such payments during the pendency of the case.

This compromise is also important considering that the companion matters will be closed as well and counsel will no longer be required to represent Plaintiff therein with no guaranty of success and limited means to collect upon any attorney time expended in order to proceed in those matters.

### **Conclusion**

For the reasons outlined above, the proposed settlement in this matter is fair and reasonable to all parties. *See Johnson v. Brennan*, 10 Civ. 4712, 2011 WL 4357376, at *12 (S.D.N.Y., Sept. 16, 2011) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."). Wherefore, counsels for the Plaintiff and Defendants respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve the Settlement Agreement.

                                      Yours Truly,
                                      Dai & Associates, P.C.

                                      /s/ Jacob Chen
                                      By: Jacob Chen, Esq.